## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**BRANDON CARTER,**

      **Petitioner,**

**v.**                               **Case No.: 3:15cv142-LC/CAS**

**SECRETARY, FLORIDA**
**DEPARTMENT OF CORRECTIONS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner Brandon Carter, proceeding pro se, filed a petition for writ of habeas corpus in this Court on March 27, 2015, by the Mailbox Rule, seeking relief under 28 U.S.C. § 2254.  ECF No. 1.  On April 21, 2015, this Court ordered Respondent to file an answer, motion, or other response, and gave Petitioner leave to reply.  ECF No. 5.  On September 21, 2015, Respondent filed a "Response to Petition for Writ of Habeas Corpus" contending that Petitioner's application should either be dismissed as untimely, or denied on one of several grounds.  ECF No. 11.  Respondent also filed exhibits in support of the response.  ECF No. 13.  Petitioner filed a reply in opposition on October 12, 2015.  ECF No. 15.

The matter is referred to the undersigned United States Magistrate Judge for issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters, pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  As explained in detail below, based on the pleadings and attachments before the Court, the undersigned has determined Respondent's motion to dismiss the petition should be granted.

## Background and Procedural History

### I. Proceedings in State Court

On April 17, 2009, Petitioner was charged by information in the Circuit Court of Escambia County, Florida, with two counts of armed robbery with a firearm in violation of sections 812.13(2)(a) and 775.087(2), Florida Statutes, and one count of possession of a firearm by a convicted felon in violation of section 790.23(1), Florida Statutes.  ECF No. 13 Ex. A.[1] He was convicted after a jury trial on both counts of armed robbery, and pled nolo contendere to the third count, which was severed for trial.  Ex. D. Petitioner was sentenced on August 28, 2009, to 15 years each on Counts I and II, and a further 15 years with respect to Count III, the sentences to

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted in support of Respondent's response under separate cover, ECF No. 13.

Case No.: 3:15cv142-LC/CAS

run concurrently.  Ex. F.  The trial court also imposed a 15-year mandatory

minimum with respect to Counts I and II pursuant to section 775.087(2),

Florida Statutes, because the offense involved a firearm.  *Id.*

Petitioner appealed, and on April 21, 2010, Petitioner's appointed

counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).

Ex. I. Petitioner did not file a supplemental pro se brief.  The First District

Court of Appeal (hereafter "First DCA") affirmed Petitioner's conviction and

sentence per curiam on August 13, 2010.  Ex. J; Carter v. State, 42 So. 3d

236 (2010) (table).  The First DCA issued its mandate on September 8,

2010.  Ex. J.  Because the First DCA affirmed Petitioner's conviction

without opinion, Petitioner was procedurally barred from seeking

discretionary review by the Florida Supreme Court.  *See*, *e.g.*, Jackson v.

State, 926 So. 2d 1262, 1265 (Fla. 2006).  Petitioner did not seek direct

review by the United States Supreme Court, and his conviction and

sentence became final on November 12, 2010. [2]  *See* Clay v. United

States, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes

---

[2] Petitioner's ninety-day filing window expired on November 11, 2010, which is a federal holiday.  Petitioner would have been unable to file a petition with the United States Supreme Court on that day.  *See* Sup. Ct. R. 1.3 (Clerk of Court's office closed on federal legal holidays).  Petitioner's filing window was thus extended to the next business day, which was Friday, November 12, 2010. Because Petitioner did not seek review by the Supreme Court, his conviction and sentence became final on that date. Case No.: 3:15cv142-LC/CAS

final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."); Bond v. Moore, 309 F.3d 770, 773–74 (11th Cir. 2002) (judgment becomes final either when the United States Supreme Court issues a decision on the merits or denies certiorari, or when the time for filing a petition for certiorari expires).

After the conclusion of direct appeal, Petitioner did not file any motions or pleadings attacking his original conviction or sentence in either state or federal court for more than a year.  In the absence of any filing which would trigger the statutory tolling provisions of 28 U.S.C. § 2244(d)(2), Petitioner's original window for filing a timely section 2254 petition expired on November 14, 2011.[3]  It may be inferred that either Petitioner did not intend to seek federal review of his conviction and sentence, or that he erroneously believed that his federal limitation period would only begin after the conclusion of the two-year window for collateral attacks in state court established by Florida law.  *See* Fla. R. Crim. P. 3.850(b) (providing that post-conviction motions are timely if filed within two

---

[3] Although the Petitioner's one-year filing window technically ended on November 12, 2011, *see supra* n. 2, that date fell on a Saturday.  Accordingly, Petitioner's last day to file a timely section 2254 motion was the following Monday, November 14, 2011.  *See* Fed. R. Civ. P. 6(a)(1)(B) &(C) (weekends and legal holidays count towards deadline calculations, but "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.")
Case No.: 3:15cv142-LC/CAS

years after the judgment and sentence become final, and listing

exceptions). By this rule, Petitioner's window to file a timely Rule 3.850

motion in Florida's courts would close on September 10, 2012.[4]  Petitioner

filed a motion for post-conviction relief pursuant to Rule 3.850 on July 31,

2012, with just over a month to spare.  Ex. N.

Petitioner's Rule 3.850 motion alleged eight grounds for relief, six of

which (Grounds 1–7) contended that Petitioner's trial counsel had been

constitutionally ineffective. *Id.*  Ground 8 alleged that the "cumulative effect

of the errors in this case" deprived Petitioner of a fair trial.  *Id.* at 18–19.

Ground 4 alleged that Petitioner's trial counsel was constitutionally

ineffective in failing to object to the court's application of a 10-year

mandatory minimum sentence to Petitioner, because the jury that convicted

Petitioner did not find that he actually possessed a firearm.  *Id.* at 8–12.  On

June 10, 2013, the state court granted Petitioner's Rule 3.850 motion with

respect to Ground 4, and denied it with respect to all other grounds.  Ex. U.

On June 11, 2013, Petitioner's judgment and sentence were re-recorded to

---

[4] Although Petitioner's two-year filing window technically closed on September 8, 2012, that date fell on a Saturday, shifting Petitioner's deadline to the following Monday, September 10, 2012.  *See* Fla. R. Crim. P. 3.040 (computation of time governed by Fla. R. Jud. Admin. 2.514(a)); Fla. R. Jud. Admin. 2.514(a)(1)(C) (filing deadlines which fall on Saturday, Sundays, or legal holidays extended until end of next day that is neither a Saturday, nor a Sunday, nor a legal holiday).

delete the mandatory minimum sentence with respect to Counts I and II. Ex. V.

Petitioner did not pursue any direct appeal of his re-entered judgment and sentence. Rather, on July 5, 2013, Petitioner filed a notice of appeal which identified the state court's denial of Petitioner's Rule 3.850 motion as the subject of the appeal. Ex. W. The First DCA affirmed the state post-conviction court's ruling per curiam without opinion on November 12, 2013, and issued its mandate on December 10, 2013. Ex. Z.

On April 17, 2014, Petitioner filed a "Motion for Discharge" pursuant to Florida Rule of Criminal Procedure 3.191(p). Ex. AA. Rule 3.191 is titled "Speedy Trial," and subsection (p) provides remedies for the failure to try a person accused of a crime within the time specified by subsection (a). In his motion, Petitioner contended that he was brought to trial 25 days later than permitted by Rule 3.191, and that this delay deprived the trial court of subject matter jurisdiction. Ex. AA. The state court denied Petitioner's motion on May 30, 2014. Ex. BB. After explaining that subject matter jurisdiction in a criminal case is invoked by the filing of a proper information, the state court held that "[Petitioner] is procedurally barred at this juncture from challenging his conviction pursuant to Rule 3.850." Petitioner appealed on June 27, 2014. Ex. CC. The First DCA affirmed per curiam

without opinion on October 6, 2014, denied Petitioner's motion for rehearing on October 28, 2014, and issued its mandate on December 9, 2014. Exs. DD & EE.

## II. Proceedings in This Court

On March 27, 2015, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting a single ground for relief. ECF No. 1. Respondent filed a combined response which first moves the Court to dismiss the petition as untimely. ECF No. 11 at 2–13. Respondent further contends that, even if Petitioner's section 2254 petition is not time-barred, it presents an issue of state law not cognizable in federal habeas, and should be dismissed. *Id.* at 13–16. Finally, Respondent argues that, even if Petitioner's claim presents a federal question, that claim should be denied on the merits. *Id.* at 16–20. Petitioner filed a reply on October 12, 2015. ECF No. 15.

## <u>Analysis</u>

## I. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, establishes timely filing as a threshold question for federal courts when reviewing petitions for federal review of state custody. *See* 28 U.S.C. § 2244(d) (establishing limitation

period).  A one-year limitation period applies to section 2254 petitions, and generally begins running from the date on which the applicant's conviction and sentence became final, whether through the conclusion of direct review thereof or through the expiration of the time in which the applicant could have sought such review.  *Id.* § 2244(d)(1)(A).  The limitation period may be tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).  "A state postconviction application remains pending until the application has achieved final resolution through the State's postconviction procedures."  Lawrence v. Florida, 549 U.S. 327, 332 (2007) (internal marks omitted) (quoting Carey v. Saffold, 536 U.S. 214, 220 (2002)).

To toll the statutory deadline, a state petition must be "properly filed." 28 U.S.C. § 2244(d)(2).  This requires, among other things, that the state application be timely filed in the state court: time limits are a "condition to filing" petitions, such that a motion which does not comply with an applicable time limitation would not be "properly filed."  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  Other conditions of filing include "the applicable laws and rules governing filings" such as "the form of the document, . . . the court and office in which it must be lodged, and the requisite filing fee."  *Id.*

Case No.: 3:15cv142-LC/CAS

"[A] petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception."  Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005).  Even if a motion is properly filed, it must be "an attack on the constitutionality or legal correctness of the sentence" to trigger statutory tolling.  Baker v. McNeil, 439 F. App'x 786, 787 (11th Cir. 2011).

Petitioner's conviction and sentence became final on November 12, 2010,[5] when the time to seek direct review by the United States Supreme Court elapsed.  See Clay, 537 U.S. at 525 ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari."); Bond, 309 F.3d at 773–74.  Because Petitioner did not file any motions which would trigger statutory tolling, the limitations period on section 2254 petitions attacking his original judgment and sentence closed on November 14, 2011,[6] one year from the date his conviction and sentence became final.

Petitioner's Rule 3.850 motion, while not timely for purposes of AEDPA, was filed within the separate two-year limitation period provided by Florida law.  Fla. R. Crim. P. 3.850(b).  When the state court granted

---

[5] See supra note 2.
[6] See supra note 3.
Case No.: 3:15cv142-LC/CAS

Petitioner's motion with respect to Ground 4, that court also re-sentenced Petitioner to remove the mandatory minimum from his earlier sentence. Because "[f]inal judgment in a criminal case means sentence[; t]he sentence is the judgment," Burton v. Stewart, 549 U.S. 147, 156 (2007) (quoting Berman v. United States, 302 U.S. 211, 212 (1937)), Petitioner's new sentence constitutes a new "judgment" for purposes of 28 U.S.C. § 2244(d)(2) and restarts Petitioner's AEDPA limitation period.  *See* Ferreira v. Sec'y, Dep't of Corrs., 494 F. 3d 1286, 1292–93 (11th Cir. 2007).  The AEDPA is "focused on the judgment which holds the petitioner in confinement. . . . Therefore, AEDPA's statute of limitations begins to run from the date both the conviction *and* the sentence . . . become final because the judgment is based on both the conviction and the sentence." *Id.* at 1193.  Furthermore, when Petitioner's new sentence was entered on June 11, 2013, Petitioner's appeal from the state court's denial of the other counts in his Rule 3.850 motion was still pending before the First DCA. Therefore, Petitioner's new AEDPA limitation period was tolled until December 10, 2013, when the First DCA issued its mandate in that case. *See* 28 U.S.C. § 2244(d)(2) (providing limitations period is tolled during "[t]he time during which a properly filed application for State post-conviction

. . . is pending").  Absent any tolling, Petitioner's restarted AEDPA clock would run until December 10, 2014.

Petitioner's Rule 3.191 motion, filed April 17, 2014, is not a proper tolling motion under AEDPA if it was not "properly filed."  Proper filing includes compliance with applicable time limitations imposed by state law. *See* Artuz, 531 U.S. at 8 (untimely motions are not "properly filed"); Pace, 544 U.S. at 413 (untimely motion to which does not meet any exception to applicable timeliness requirements is not "properly filed").  In its order denying Petitioner's motion, the state court stated simply that Petitioner "is procedurally barred at this juncture from challenging his conviction pursuant to Rule 3.850."  Ex. BB at 2.  Although the court did not provide further explanation, this statement may reflect that, under Florida law, Petitioner's original window to file applications for state post-conviction relief had closed on September 10, 2012.  *See* Fla. R. Crim. P. 3.850(b) (barring motions "filed more than 2 years after the judgment and sentence become final" absent applicable exception).

Between the issuance of the mandate in Petitioner's appeal from the denial his Rule 3.850 motion on December 10, 2013, and the Petitioner's filing of his Rule 3.191 motion on April 17, 2014, 128 days passed.  At the time he filed his Rule 3.191 motion, Petitioner had 237 days remaining to

Case No.: 3:15cv142-LC/CAS

file a section 2254 petition before the December 10, 2014, deadline.  If

Petitioner's Rule 3.191 motion is considered properly filed, and thus tolled

the AEDPA limitation period, then the limitation period would close on

August 3, 2015, and his 2254 petition, filed March 27, 2015, would be

timely.  Accordingly, whether Petitioner's Rule 3.191 motion was "properly

filed" under Florida law is dispositive of timeliness in this case.

Although a later resentencing resets the AEDPA limitation period, *see*

*supra* pp. 9–10, Florida courts are divided on whether a later resentencing

affects the Rule 3.850 filing deadline.  Respondent cites Zeigler v. State,

632 So. 2d 48, 50 (Fla. 1993), *cert. denied*, 513 U.S. 830 (1994), and

Kissel v. State, 757 So. 2d 631, 632 (Fla. 5th DCA 2000), for the

proposition that the "two-year time period for challenging a conviction

commenced when the conviction alone became final, not when both the

conviction and sentence became final."  Kissel, 757 So. 2d at 632 (citing

Zeigler).  This is not, however, the precise holding of the Florida Supreme

Court in Zeigler.

In <u>Zeigler</u>, the petitioner's 1976[7] conviction and sentence were affirmed on direct appeal in 1981, and the United States Supreme Court denied certiorari on March 22, 1982.  <u>Zeigler v. Florida</u>, 455 U.S. 1035 (1992); *see* <u>Zeigler</u>, 632 So. 2d at 49.  In 1988, Zeigler was resentenced, and that sentence was affirmed in 1991.  <u>Zeigler</u>, 632 So. 2d at 50.  The United States Supreme Court denied certiorari in 1991.  <u>Zeigler v. Florida</u>, 502 U.S. 946 (1991).  Zeigler filed a Rule 3.850 motion in 1992, raising various procedural challenges to the guilt phase of his capital murder trial.  632 So. 2d at 50.  The Florida Supreme Court noted that "[a]n individual whose judgment and sentence became final prior to January 1, 1985, had until January 1, 1987, to file under [Rule 3.850]" and stated that January 1, 1987 was "the cut-off date for postconviction relief in this case *insofar as guilt is concerned*."  *Id.* (emphasis added).

The Fifth DCA in <u>Kissel</u> cites <u>Zeigler</u> for the proposition that the two-year deadline for timely filing of Rule 3.850 motions does not restart after a later resentencing.  The Fourth DCA disagreed in <u>Pierce v. State</u>, reasoning that a conviction and its corresponding sentence could become

---

[7] The case history does not reflect the exact date of Zeigler's conviction and the entry of judgment by the trial court.  On direct appeal, the Florida Supreme Court noted that Zeigler's trial began on June 1, 1976.  <u>Zeigler v. State</u>, 402 So. 2d 365, 370 (Fla. 1981).
Case No.: 3:15cv142-LC/CAS

final at different times, and held "that the two-year window commences when both the conviction and sentence are final."  875 So. 2d 726, 728–29 (Fla. 4th DCA 2004).  Although it addressed <u>Zeigler</u>, the Fourth DCA's decision in <u>Pierce</u> may not be on all fours with <u>Kissel</u>, because the new sentencing in <u>Pierce</u> came about through direct appeal vacating Pierce's sentence, rather than through post-conviction litigation.  *See* <u>Pierce</u>, 875 So. 2d at 727.  The <u>Pierce</u> court relied on the Second DCA's decision in <u>Snipes v. State</u>, which held that "the unequivocal language of rule 3.850(b)" supports the contention that the two-year limitation period prescribed by that rule begins to run when both the judgment *and* sentence become final. 843 So. 2d 1043, 1044 (Fla. 2d DCA 2003).  The Second DCA rejected Respondent's formulation of Rule 3.850, because it could lead to an individual forfeiting their right to pursue a collateral challenge to their conviction by pursuing a lengthy appeal of their sentence.  *Id.* at 1044.

The First DCA—which has jurisdiction over Petitioner's case in state court—has also held that "the two-year period in the rule does not commence until *both* the conviction and the sentence become final, which occurs upon issuance of the mandate in the direct review proceedings." <u>Breland v. State</u>, 58 So. 3d 326, 327 (Fla. 1st DCA 2011) (citing <u>Pierce</u> and <u>Snipes</u>).

Case No.: 3:15cv142-LC/CAS

Whether Petitioner's Rule 3.191 motion was timely is purely a question of state law, which this Court cannot decide. Furthermore, this Court has no power to resolve the apparent conflict, if any, among the First, Second, Fourth, and Fifth DCAs in the above-cited cases. Because it is possible to resolve Petitioner's claim on the merits, this Report and Recommendation assumes for the sake of argument that the petition was timely filed, and addresses the substance of Petitioner's claims.

## II. Jurisdiction

In his section 2254 petition, Petitioner raises a single claim: his right to a speedy trial was violated. Petitioner was arrested on January 16, 2009, ex. A at 3, and brought to trial on August 3, 2009, some 199 days later. Ex. C. Petitioner argues "the trial court was without jurisdiction to enter a judgment and sentence" in his case, because he was brought to trial outside the 175-day speedy trial window for felony charges. ECF No. 1 at 3; *see* Fla. R. Crim. P. 3.191(a) (providing that, if no demand is filed, a person charged with a felony must be brought to trial within 175 days of arrest). Respondent interprets the petition to raise a claim of Florida law only, without any federal constitutional claim, because Petitioner references his right to a speedy trial only under Rule 3.191. ECF No. 11 at 13–16. Assuming for the sake of argument that the petition is timely, Respondent

Case No.: 3:15cv142-LC/CAS

moves the Court to dismiss the petition for failure to raise a federal question. *Id.*

"The district courts of the United States, as we have said many times, are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute'."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)).  Congress has provided that federal courts shall entertain an application for writ of habeas corpus "only on the ground that [the applicant] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This mandate is clear: absent a federal question, a federal court lacks jurisdiction to hear the petition, and must dismiss it.   "[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."  Wilson v. Corcoran, 562 U.S. 1, 5 (2010).  Therefore, if Petitioner does not present a federal claim, the Court must dismiss his petition.

The Court's interpretation of pleadings is guided both by rule and by case law.  "[T]he Federal Rules of Civil Procedure 'may be applied, when appropriate' in habeas proceedings, but only 'to the extent they are not inconsistent with [the Rules Governing § 2254 Cases]'."  Gonzalez v. Sec'y

Case No.: 3:15cv142-LC/CAS

for Dep't of Corrs., 366 F.3d 1253, 1269–70 (11th Cir. 2004) (quoting Rule
11, Rules Governing § 2254 Cases).  To survive a motion to dismiss, a
pleading need only be sufficient on its face to state a plausible claim for
relief.  *See* McClure v. Oasis Outsourcing II, Inc., No. 16-11783, 2016 WL
7473780, at *1 (11th Cir. Dec. 29, 2016) (citing Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009)). Federal courts must construe pleadings "so as to do
justice."  Fed. R. Civ. P. 8(e).  Furthermore, because Petitioner is
proceeding pro se, the Court must interpret his pleadings with less
stringency than it would similar pleadings drafted by lawyers.  Haines v.
Kerner, 404 U.S. 519, 520–21 (1972).  Accordingly, to decide whether
Petitioner raises a federal question, the Court may broadly construe
Petitioner's pleadings to determine whether they are facially sufficient to
state a violation of section 2254(a).

Petitioner's speedy trial claim appears to rest primarily on Florida law,
but not exclusively so.  In his petition to this Court, Petitioner asserts that
the alleged violation of Rule 3.191 was a "violation of his constitutional right
to a speedy trial and violation of the state rules of criminal procedure.  In
accordance with the Sixth and Fourteenth amendments of the United
States Constituton."  ECF No. 1 at 4.  In his reply to the instant motion,
Petitioner contends that he "is in custody in violation of the 14th

Amendment's due process clause" as a result of the alleged speedy trial violation, and also that this "was a violation of the right to equal protection of [the law]." ECF No. 15 at 2. Petitioner claims that the state post-conviction court's ruling "was a[n] unreasonable determination of the facts in light of the evidence presented," that he "was entitled to discharge as a matter of Florida [l]aw," and that he was brought to trial outside the "recapture" period established by Florida law. *Id.* at 2–3.

Although Petitioner appears to assume that the speedy trial standard established by Florida law is the same as that established by federal law, this legal error does not prevent Petitioner from adequately asserting a federal speedy trial claim. Petitioner twice references his Sixth Amendment right, independent of any state law claims: that Petitioner does so in a perfunctory manner does not remove this Court's obligation to construe his pleadings so as to do justice. A fair reading of the petition shows that Petitioner intends to raise claims under both federal and state law. Accordingly, because Petitioner does claim a violation of the rights guaranteed to him by the United States Constitution, this Court has jurisdiction under section 2254(a) to consider Petitioner's allegations that those rights were violated. To the extent that Petitioner claims only violations of Florida law, the Court lacks jurisdiction to hear those claims.

Case No.: 3:15cv142-LC/CAS

### III. Petitioner's Sixth Amendment Claim

"[T]he right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment."  Klopfer v. North Carolina, 386 U.S. 213 223 (1967).  Incorporating this right through the Fourteenth Amendment and applying it to the States, the Supreme Court noted that the right to a speedy trial "has its roots at the very foundation of our English law heritage" and was first recognized a half-century before the Magna Carta was written.  Id. (discussing the history of the right).  Despite this, it is "impossible to determine with precision when the right has been denied" without "a functional analysis of the right in the particular context of the case".  Barker v. Wingo, 407 U.S. 514, 521–22 (1972).

Barker and its progeny make clear that the federal right to a speedy trial need not be coextensive with a corresponding right under state law, if any.  The Court in Barker stated that it found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months.  The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise." 407 U.S. at 523.  The Constitution requires only a "reasonable period," not a bright-line rule such as that applied in Florida courts.  "When determining whether the government has violated a

defendant's speedy trial right, we consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether and how the defendant asserted his speedy trial right; and (4) prejudice to the defendant." United States v. Knowles, 390 F. App'x 915, 929 (11th Cir. 2010). "The first factor serves a triggering function; unless some presumptively prejudicial period of delay occurred, we need not conduct the remainder of the analysis." *Id.* (quoting United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999)) (internal marks omitted). Delays become presumptively prejudicial as they approach one year. *Id.* (citing United States v. Knight, 562 F.3d 1314, 1323 (11th Cir. 2009)).

Under Knowles, there is no need to look beyond the first factor in the present case. Petitioner was brought to trial within a year of his arrest, and the remainder of the Barker analysis need not be considered. Even if considered, Petitioner has not alleged a reason for the delay; neither has he proffered that he asserted his speedy trial right by any means other than alleging that his counsel "provided that he was ready for trial" 172 days after Petitioner was arrested, ECF No. 1 at 4. The record does not reflect whether Petitioner's trial counsel stipulated to Petitioner's trial date by affirmative acceptance of it, or through passive acceptance by failure to object thereto. *See* McKinney v. Yawn, 625 So. 2d 885, 890–91 (Fla. 1st

DCA 1993) (waiver not found where defense counsel silently acquiesces to trial date).  The record does not indicate that Petitioner filed a demand for speedy trial.  *See* Fla. R. Crim. P. 3.191(b).  Petitioner also does not appear to have sought the procedural remedy prescribed by Rule 3.191 itself.  *See* Fla. R. Crim. P. 3.191(p) ("Remedy for Failure to Try Defendant within the Specified Time").  For purposes of the <u>Barker</u> analysis, Petitioner's assertion of his right has been confined to post-conviction litigation.  Finally, Petitioner has not proffered any actual prejudice he suffered as a result of any delay.  *See* <u>United States v. Mitchell</u>, 769 F.2d 1544, 1547 (11th Cir. 1985) (defendant must demonstrate actual prejudice, unless first three factors "all weigh heavily against the government"); *see also* <u>Barker</u>, 407 U.S. at 519–22 (discussing societal and procedural interests in speedy trials generally, including possible prejudice to the parties).

## Conclusion

Even assuming his section 2254 petition is timely, Petitioner cannot demonstrate that his Sixth Amendment rights were violated.  Accordingly, the Court should deny the 2254 petition on the merits.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make "a substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining substantial showing).  Therefore, the Court may deny a certificate of appealability.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

Case No.: 3:15cv142-LC/CAS

## Recommendation

It is therefore respectfully **RECOMMENDED** that Respondent's motion to dismiss (ECF No. 11) be **DENIED** and that the petition for writ of habeas corpus pursuant to section 2254 (ECF No. 1) be **DENIED**.  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida on February 6, 2017.

S/ Charles A. Stampelos_____
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of these objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**